## Goffinett v. Goffinett.

(Decided Feb. 24, 1933.)

ROBERT HUBBARD for appellant.
BECKHAM OVERSTREET for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Reversing.

Appellant and appellee were married about twenty-six years ago. They separated in 1920, he then leaving his wife and two children, the son being about thirteen years old and the daughter eleven. She filed a suit against him for alimony and he paid her $60 a month until April, 1926. After they had been living apart five years, he filed suit against her for divorce and she filed no answer. Judgment was entered granting him a divorce on April 17, 1926. On May 19, 1926, she filed a motion to set aside the judgment and tendered an answer and counterclaim. Various affidavits were filed, proof was taken, and on February 14, 1927, a judgment was entered requiring appellee to pay appellant alimony in the sum of $50 a month, beginning from February 15, 1927, until further order by the court. He failed to pay, and on the 23d of March she entered a motion for judgment against him for $100, for the two payments then due. The motion was sustained; judgment was entered and execution was issued on the judgment April 11, 1927, and returned no property found on April 12, 1927. W. L. Doolan was her attorney in these

matters and in a proposed settlement that fell through. Later she employed J. J. McTighe and he, on the 13th day of May, 1929, filed a petition showing that nothing had been paid on the alimony since it had been allowed in 1927, though repeatedly demanded, and judgment was prayed for the amount due. On this petition a judgment was entered for $1,250 by default. On July 30, 1930, execution was issued on the judgment and it was returned no property found. Another execution was issued on April 17, 1931, and returned in the same way. On May 1, 1931, McTighe not having collected anything, the appellant employed Lee Jones and he not making any progress she employed Roscoe Conklin and he not succeeding in getting her any money she employed Robert Hubbard who, on May 23, 1932, entered a motion before the court for a judgment for $1,800, back alimony, and for a rule against the appellee to show cause, if any he could, why he should not be punished for his failure to comply with the order of the court directing him to pay the appellant $50 a month. On this motion it was shown that nothing had been paid. Proof was heard, judgment was entered for her for $1,800, with interest, and an order was entered June 25, 1932, adjudging appellee's response to the rule insufficient and requiring him to make a payment of $50 on July 1, 1932, and keep up regularly payments of $50 on the first of each month. Appellant excepted to the judgment and moved the court to require appellee to pay her in the future $50 a month, as provided by the former judgment, and also to pay her the sum of $50 a month on the judgments theretofore rendered until he purged himself of contempt of court and upon his failure to do so to commit him to jail. The court declined to make this order, but only required the appellee to keep up regularly the payments of $50 a month on the first of each month. From this judgment the appeal before us is taken by her.

The proof heard before the circuit court was conflicting. The proof for the appellant showed these facts: The appellee is making $200 a month when he works regularly, and usually makes about $175 a month. He is living with his mother in the house owned by his father, who died some years ago, and a widowed sister lives with them; she has a son who is over twenty-one years of age, lives elsewhere, and is at work, but contributes nothing to the support of the family; the

mother is seventy-eight years old; the daughter about forty-nine and both in ordinary health considering their ages. The mother had some insurance from her husband but, as she testifies, this is spent and she and the daughter are without any means of support except appellee.

On the contrary the proof for appellee is that his mother and sister are in bad health and require much attention, and that the necessary expense of keeping up the family all falls on him and costs him about $100 a month. On the other hand the appellant shows that he spends his money rather freely, betting on the races, drinking, etc.

The chancellor's opinion rests on the ground that appellant has lost by laches the right to enforce her judgment for past alimony by process of contempt and that to do so under the facts of the case would be inequitable. Appellant's son is married; he lives with his wife and child. He is making about $25 a week. The daughter lives with her mother and is making $12 a week. The mother has all her life been simply the housekeeper of the family and is without means. While the case was in Mr. Doolan's hands, appellee proposed a settlement at a lump sum and signed a contract to this effect, but appellant did not think it was enough and refused to agree to this settlement. There were several conferences while this was going on and this may account for a part of the delay while the case was in Mr. Doolan's hands. Appellant testifies that after the judgment in February, 1927, was rendered, appellee told her this: "He told me he wasn't going to give me a damn cent that he would pay it to the attorneys before he would give it to me, and to take in washings."

He denies this but his subsequent conduct is in line with it. Section 1663, Ky. Stat., after providing that judgment may be enforced by execution, adds this:

"Nothing in this article shall prevent any party from proceeding to carry an order or judgment of court into execution according to the ancient practice of courts of chancery."

In Gerrin's Adm'r v. Michie, 122 Ky. 250, 91 S. W. 252, 253, 28 Ky Law Rep. 1193, the court said:

"But a judgment in favor of the wife for alimony stands just like any other judgment."

Again in Sebastin v. Rose, 135 Ky. 197, 122 S. W. 120, 121, the court said:

> "Divorce proceedings in this state come within the exclusive cognizance of courts of chancery jurisdiction. Judgments in chancery may be enforced by any appropriate writ allowed for the enforcement of judgments at law. Section 1663, Ky. Stats. * * * The circuit courts of this state have all power anciently vested in the English Courts of Chancery."

Again in Roper v. Roper, 242 Ky. 658, 47 S. W. (2d) 517, 519, the court, citing the above cases, said:

> "Reviewing the action of the chancellor in the case at bar, it seems to us that he rightly adjudged the response of the appellee insufficient to relieve him of the duty to obey the decree. He should have been given an opportunity to amend his response; and, failing then to establish any right to relief from the judgment, he should have stood committed until he purged himself of the contempt. The appellant was entitled under the law to more affirmative action by the trial court."

Appellant had lost none of her rights by the failure of her attorneys to ask sooner a rule on the appellee to pay the amounts the court had adjudged to her. She had taken out an execution in 1930, and another in 1931. The appellee was simply refusing to pay her anything, and was simply attempting to force her to accept a settlement which he had proposed. In 21 C. J. p. 210, the rule as to laches is thus clearly stated:

> "Laches in a general sense is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. More specifically, it is inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing conditions and an acquiesence to them; such neglect to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity; such delay in enforcing one's rights as works disadvantage to another."

There was no neglect here for an unreasonable length of time to do what in law should have been done.

No prejudice or disadvantage has resulted to appellee. He has simply been given time on the debt and the execution and other proceedings advised him that payment was expected. The delay in taking out the rule was due simply to a difference in judgment on the part of the lawyers as to the best step to be taken.

The husband's first duty is to his wife. While he should take care of his aged mother and his widowed sister, if he can, he should not neglect his wife. He should not be required, under the facts shown, to pay at once all the sums in arrear, but he should be required to make such payments thereon as he reasonably can make when he does not spend his money on horse races or something to drink and the like. On all the facts the court concludes that the circuit court should have required the appellee by rule to pay to his wife $200 a year on the back alimony, payable in equal monthly installments of $16.66 on the first of each month, in addition to the allowance of $50 for the future alimony. On all the facts the court concludes that he can reasonably do this out of his present earnings, as shown by the record.

It is suggested in the briefs that as the son is of age and the daughter is earning $12 a week, the condition of the wife's family is not such as it was when the $50 a month was allowed, and that the allowance of $50 a month for the future should be reduced. But there is no cross-appeal and no motion to this effect has been made in the circuit court. This is a matter that would depend upon the facts and must be first heard and determined in the court of original jurisdiction.

Judgment reversed and cause remanded for a judgment as above indicated, to take effect from the time it is entered.